14

776 S.E.2d 917

The STATE, Respondent,

v.

Lamar Sequan BROWN, Appellant.

Appellate Case No. 2013–000725.
No. 5355.

Court of Appeals of South Carolina.

Heard May 5, 2015.
Decided Sept. 23, 2015.
Rehearing Denied Oct. 8, 2015.
Rehearing Denied Oct. 19, 2015.

Appellate Defender David Alexander, of Columbia, for appellant.

Attorney General, Alan McCrory Wilson and Senior Assistant Deputy Attorney General, Salley W. Elliott, both of Columbia; and Solicitor Scarlett Anne Wilson, of Charleston, for respondent.

THOMAS, J.

Lamar Sequan Brown appeals his conviction for first-degree burglary, arguing the trial court erred in admitting evidence obtained from a warrantless search of the contents of his code-locked cell phone. We affirm.

**FACTS AND PROCEDURAL HISTORY**

The two victims shared a first-floor condominium in Charleston County. Neither was home during the evening of Thursday, December 22, 2011. Sometime after 10:30 p.m. that night, one of the victims heard a phone ring after he returned to the residence. When he went to investigate, he saw an unfamiliar cell phone on the floor and noticed a window had been broken, his television was gone, and his bedroom had been ransacked. The victim claimed he "immediately knew that [the cell phone] was none of ours."

When the police arrived, the victim who discovered the burglary gave Officer Matthew Randall the unfamiliar cell phone. Officer Randall took the phone to the police station and placed it inside a secure box by the evidence desk. Fingerprints could not be obtained from the phone because the victim had handled it. Attempts to take fingerprint evidence from the crime scene were also unsuccessful.

Jordan Lester, the lead detective assigned to the case, began his investigation on December 28, 2011, and learned nobody had claimed the phone found at the crime scene. Considering the phone abandoned, Detective Lester opened the phone and noticed the background picture portrayed a black male with dreadlocks.[1] Detective Lester then searched the contacts list to look for a possible relative. He found an entry for "Grandma," took the corresponding number, entered it into a comprehensive database maintained by the Charleston Police Department, and obtained a list of relatives and their age ranges. Using this information, Detective Lester accessed records of the South Carolina Department of Motor Vehicles (DMV), found a driver's license photograph that matched the image on the phone, and obtained a name and

---

1. The phone was protected by a passcode, but Detective Lester unlocked the phone by entering "1–2–3–4," which he described as a "lucky guess."

address for the individual in question. The individual was identified as Lamar S. Brown.

Later the same day, Officer Dustin Thompson visited Brown at the address Detective Lester obtained from the DMV records. After Officer Thompson informed Brown he was investigating a burglary, Brown agreed to speak with him privately. The two went into Officer Thompson's vehicle to discuss the matter. Although Brown was given *Miranda*[2] warnings, he was not handcuffed or placed under arrest.

While questioning Brown, Officer Thompson did not initially disclose that the burglary he was investigating had taken place on December 22, 2011. Brown told Officer Thompson he lost his phone on Friday, December 23, 2011. Brown claimed he had the phone with him when he drove to the store but could not find it when he returned to his vehicle. Brown stated he disconnected service to the phone when he learned from a friend that someone else had it. When Officer Thompson asked Brown whether he left his home between 6:00 p.m. and midnight on December 22, 2011, Brown answered he did not. Brown also told Officer Thompson no one else had possession of his phone during that time. When Officer Thompson showed Brown the phone found at the victims' residence on the night of the burglary, he acknowledged the phone belonged to him.

During the meeting, Brown signed a form with printed language indicating he had been advised of his *Miranda* rights but chose to waive them and answer questions concerning a possible burglary charge. The form also included a handwritten "witness statement" on which Officer Thompson's questions and Brown's answers were recorded. Some of the responses were written by Brown himself.

Subsequently, police obtained consent to search Brown's residence but did not recover any of the stolen items. A warrant for Brown's arrest was issued on December 29, 2011, and he was arrested a few weeks later.

On November 5, 2012, Detective Lester obtained a search warrant for records from T–Mobile, the service provider for

---

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Brown's phone. The warrant directed T–Mobile to provide its records from December 9, 2011, to January 3, 2012, for the number assigned to the phone. The information T–Mobile provided revealed the phone was deactivated on January 22, 2012, apparently later than when Brown indicated he cancelled his service.[3] T–Mobile's records also showed activity on the phone during the interval the victims were away from the residence.

On November 13, 2012, a grand jury indicted Brown for first-degree burglary, and he proceeded to trial on March 6, 2013. During a pretrial hearing, Brown moved to suppress all evidence obtained from his cell phone, arguing his Fourth Amendment rights were violated because the police did not obtain a search warrant before unlocking the phone. In the jury's absence, the trial court heard testimony from Detective Lester and Officer Thompson on the motion.[4]

The trial court initially found Brown had a Fourth Amendment expectation of privacy in the phone because it was passcode-protected. However, the court denied Brown's motion to suppress, concluding that regardless of whether the phone was inadvertently dropped or deliberately discarded at the victims' residence, this expectation of privacy had been abandoned. During the State's case-in-chief, Brown made several unsuccessful motions based on his pretrial objection to suppress evidence obtained directly or indirectly from the warrantless search of his cell phone.

After the State rested, Brown declined to testify and did not call any witnesses. The jury found Brown guilty as charged, and Brown moved for a new trial based on his previous Fourth Amendment objections. The trial court denied the motion and

---

3. A T–Mobile representative testified the phone would not have been automatically deactivated; an individual would have to call T–Mobile to deactivate the phone.

4. The trial court also heard a motion in limine from Brown regarding the admission of testimony from the clerk of court that Brown had two prior burglary convictions. The State advised that Brown actually had six prior convictions but it would limit the evidence to two convictions pursuant to State v. Benton, 338 S.C. 151, 526 S.E.2d 228 (2000), to satisfy a required element of burglary in the first degree. The court allowed the State to present evidence of the convictions but prohibited evidence on the underlying facts. Brown has not appealed this ruling.

sentenced Brown to eighteen years' imprisonment. This appeal followed.

## ISSUE ON APPEAL

Did the trial court's admission of evidence obtained from the warrantless search of Brown's code-locked cell phone violate Brown's Fourth Amendment rights?

## STANDARD OF REVIEW

When reviewing a trial court's ruling on the admissibility of evidence in a Fourth Amendment search and seizure case, the appellate court "will review the trial court's ruling like any other factual finding and reverse if there is clear error." *State v. Brockman*, 339 S.C. 57, 66, 528 S.E.2d 661, 666 (2000). The appellate court "will affirm if there is any evidence to support the ruling." *Id.; see also Robinson v. State*, 407 S.C. 169, 180–81, 754 S.E.2d 862, 868 (2014) ("On appeal from a motion to suppress on Fourth Amendment grounds, [appellate courts] appl[y] a deferential standard of review and will reverse only if there is clear error.").

## LAW/ANALYSIS

Brown argues the police needed a warrant to search his phone and no exception to the warrant requirement applied to the facts of this case. He disputes the trial court's finding that he abandoned his expectation of privacy in his phone, asserting he maintained this expectation by locking the phone with a passcode. The purpose of the passcode, Brown claims, was to protect sensitive personal information contained within the phone rather than to protect the phone itself.

The State argues the trial court properly found the police could search the phone without a warrant because it was abandoned property left at the scene of a crime. We agree with the State.

The Fourth Amendment to the United States Constitution recognizes "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Our state constitution also recognizes this right. *See* S.C. Const. art. I, § 10 (containing language nearly identical to that in the Fourth Amendment). "[T]he ultimate measure of the constitutionality of a governmental search is 'reasonableness.' " *Ver-*

*nonia Sch. Dist. 47J v. Acton,* 515 U.S. 646, 652, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995). "Where a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, . . . reasonableness generally requires the obtaining of a judicial warrant." *Id.* at 653, 115 S.Ct. 2386.

In *Riley v. California,* ——— U.S. ———, 134 S.Ct. 2473, 189 L.Ed.2d 430 (2014), a decision issued after Brown's trial, the Supreme Court of the United States addressed the constitutionality of a warrantless search of a cell phone seized incident to a lawful arrest. Although the present case does not involve such a search, we are mindful of the Court's recognition that the immense storage capacity of modern cell phones presents privacy concerns that have not arisen in searches of other physical items:

> The storage capacity of cell phones has several interrelated consequences for privacy. First, a cell phone collects in one place many distinct types of information . . . that reveal much more in combination than any isolated record. Second, a cell phone's capacity allows even just one type of information to convey far more than previously possible. . . . Third, the data on a phone can date back to the purchase of the phone, or even earlier. . . .
>
> Finally, there is an element of pervasiveness that characterizes cell phones but not physical records. Prior to the digital age, people did not typically carry a cache of sensitive personal information with them as they went about their day. Now it is the person who is not carrying a cell phone, with all that it contains, who is the exception. . . .
>
> Although the data stored on a cell phone is distinguished from physical records by quantity alone, certain types of data are also qualitatively different.

*Id.* at 2489–90.[5]

Based on these considerations, the Court refused to extend its holding in *United States v. Robinson,* 414 U.S. 218, 224, 94

---

5. The Court actually considered two cases that were consolidated for appeal, both of which raised the question of whether the police had the right to perform a warrantless search of digital information on a cell phone seized from an arrestee. *Riley,* 134 S.Ct. at 2480. One case involved a "smart phone," which had "a broad range of other functions based on advanced computing capability, large storage capacity, and

S.Ct. 467, 38 L.Ed.2d 427 (1973), that despite the absence of any concern about loss of evidence or weapons within the defendant's reach, the arresting officer's actions in (1) removing a crumpled cigarette package from the defendant's person during the arrest, (2) opening it, and (3) discovering capsules of white powder that later proved to be heroin "did not offend the limits imposed by the Fourth Amendment." The Court in *Riley* expressly "decline[d] to extend *Robinson* to searches of data on cell phones." *Riley*, 134 S.Ct. at 2485. Rather, the Court stated:

> Modern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans "the privacies of life[.]" The fact that technology now allows an individual to carry such information in his hand does not make the information any less worthy of the protection for which the Founders fought. Our answer to the question of what police must do before searching a cell phone seized incident to an arrest is accordingly simple—get a warrant.

*Id.* at 2494–95 (citation omitted).

◼ Despite the decisive tone in these statements, the Court did not require law enforcement officers to obtain a warrant to search every cell phone that falls into their possession. *See id.* at 2494 ("[E]ven though the search incident to arrest exception does not apply to cell phones, other case-specific exceptions may still justify a warrantless search of a particular phone."). Although "a warrantless search is per se unreasonable and violative of the Fourth Amendment," there are "several well-recognized exceptions to the warrant requirement." *State v. Morris*, 411 S.C. 571, 580, 769 S.E.2d 854, 859 (2015). Our supreme court has recognized the doc-

---

Internet connectivity." *Id.* The cell phone at issue in the companion appeal was a "flip phone," which the Court described as "a kind of phone that is flipped open for use and that generally has a smaller range of features than a smart phone." *Id.* at 2481. Although the Court's analysis appears to focus on privacy concerns arising from the more contemporary smart phones, the Court expressed similar concerns regarding basic, older model phones such as the phone at issue in the present appeal. *See id.* at 2489 ("Even the most basic phones that sell for less than $20 might hold photographs, picture messages, text messages, Internet browsing history, a calendar, a thousand-entry phone book, and so on.").

trine of abandonment as one such exception to the Fourth Amendment warrant requirement. *State v. Dupree,* 319 S.C. 454, 457, 462 S.E.2d 279, 281 (1995). Under this doctrine, "[a]bandoned property has no protection from either the search or seizure provisions of the Fourth Amendment." *Id.;* *see also United States v. Tugwell,* 125 F.3d 600, 602 (8th Cir.1997) ("A warrantless search of abandoned property does not implicate the Fourth Amendment, for any expectation of privacy in the item searched is forfeited upon its abandonment.").

"[T]he Fourth Amendment is not triggered unless a person has an actual and reasonable expectation of privacy or unless the government commits a common-law trespass for the purpose of obtaining information." *State v. Robinson,* 410 S.C. 519, 527, 765 S.E.2d 564, 568 (2014) (citation omitted). Whether such an expectation of privacy has been abandoned "is determined on the basis of the objective facts available to the investigating officers, not on the basis of the owner's subjective intent." *Tugwell,* 125 F.3d at 602; *see also State v. Taylor,* 401 S.C. 104, 119, 736 S.E.2d 663, 670–71 (2013) ("Whether a Fourth Amendment violation has occurred turns on an objective assessment of [an officer's] actions in light of the facts and circumstances confronting him at the time...." (alteration by court) (internal quotation marks omitted)). Moreover, in determining whether property has been abandoned in the Fourth Amendment context, the inquiry is not whether the owner of the property has relinquished his or her interest in it such that another, having acquired possession, may successfully assert a superior interest. *Dupree,* 319 S.C. at 457, 462 S.E.2d at 281. Rather, " 'the question is whether the defendant has, in discarding the property, relinquished his reasonable expectation of privacy so that its seizure and search is reasonable within the limits of the Fourth Amendment. In essence, what is abandoned is not necessarily the defendant's property, but his reasonable expectation of privacy therein.' " *Id.* (quoting *City of St. Paul v. Vaughn,* 306 Minn. 337, 237 N.W.2d 365, 371 (1975)).

Here, during the suppression hearing, the State advised the trial court of case law supporting the proposition that Brown's apparent lack of effort to locate his phone after it was discovered at the crime scene was objective evidence establishing he

abandoned any reasonable expectation of privacy in the phone and its data. Among the cases the State cited to the trial court was *United States v. Oswald*, 783 F.2d 663 (6th Cir. 1986), which concerned the denial of a motion to suppress drugs found during a warrantless search of a locked metal briefcase taken by the police from the locked trunk of a burned-out automobile the defendant left on the berm of an interstate highway. The trial court found the defendant had already abandoned both the car and the items left inside before responding law enforcement officers found and searched the briefcase inside the car trunk. *Id.* at 664–65. In affirming the finding of abandonment, the United States Court of Appeals for the Sixth Circuit stated:

[A] guilty conscience cannot create an expectation of privacy that would not otherwise exist. Where an ordinary person could fairly be said to have abandoned his privacy interests by failing to come forward, a reasonable expectation of privacy cannot be thought to have been retained solely by virtue of the fact that the person happens to be guilty of a crime.

*Id.* at 667. Although the court expressly noted Oswald locked both the briefcase and car trunk, these precautions were not mentioned as possible reasons to support a finding that he continued to maintain an expectation of privacy after fleeing from the burning automobile. *Id.* On the contrary, the court determined Oswald's flight "provided objective abandonment evidence." *Id.* at 669.

The State also cited *People v. Daggs*, 133 Cal.App.4th 361, 34 Cal.Rptr.3d 649 (2005), during the suppression hearing. *Daggs* involved the warrantless search of the defendant's cell phone, which was found shortly after a robbery at a drug store. *Id.* at 650. After no one came forward to claim the phone during the twenty to thirty minutes the officers remained at the store, the phone was booked into evidence at the police station, where it remained unclaimed for one week. *Id.* A passcode had been installed on the phone, but a detective discovered the phone's electronic serial number and other numbers by removing the battery. *Id.* at 650–51. Using these numbers, the detective procured a search warrant to release the subscriber's name, telephone number, and telephone records; however, the detective did not obtain a search warrant before removing the battery. *Id.* at 651. The subscriber was

the defendant's brother, who told the police he had given the phone to the defendant. *Id.*

After the trial court denied the defendant's motion to suppress this evidence, the defendant entered a plea of no contest to one count of robbery. *Id.* at 650. The California Court of Appeal affirmed the trial court's finding the defendant abandoned his phone at the scene of the robbery. *Id.* The court held no unlawful search took place when the police removed the battery to view the numbers identifying the phone and gave the following explanation for its decision:

> Defendant contends ... that since it was undisputed that he *accidentally* dropped the phone at Walgreen's, the court could not find that he intentionally or voluntarily discarded it. Defendant's testimony, assuming it were credited, would support an inference that at the moment he first dropped the phone he did not subjectively intend to discard it. Nonetheless, his own testimony also unequivocally established that as soon as he realized he had left the phone behind, he made a conscious and deliberate decision not to reclaim his phone, and never did. He therefore voluntarily abandoned it.
>
> In any event, the intent to abandon is determined by objective factors, not the defendant's subjective intent. Abandonment is primarily a question of intent, and intent may be inferred from words, acts, and other *objective* facts. Abandonment here is not meant in the strict property-right sense, but rests instead on whether the person so relinquished his interest in the property that he no longer retained a reasonable expectation of privacy in it at the time of the search. [The victim] informed the officers who found the phone at the scene that he had not seen the cell phone in that area prior to his confrontation with the robber. No one else at the scene claimed the phone, nor did anyone assert a claim to it in the week after the robbery. Therefore, when the police seized the phone, and certainly by the time [police] finally performed the challenged search, these circumstances were all objective indications that defendant had discarded the phone, and would not reclaim it.

*Id.* at 651–52 (citations and internal quotation marks omitted).

*Oswald* and *Daggs* establish that an individual can abandon an expectation of privacy in the contents of a locked container,

26

including a cell phone, when objective facts support law enforcement's belief the owner of the container has forgone his intent to protect the container or its contents. *See also Wilson v. State*, 966 N.E.2d 1259, 1264 (Ind.Ct.App.2012) (rejecting a defendant's argument that he did not abandon a car when he locked the car before fleeing from police and holding "the fact that the vehicle was locked does not necessarily negate a reasonable inference that [the defendant] abandoned it"); *State v. Smith*, 681 So.2d 980, 989 (La.Ct.App. 1996) (same); *State v. List*, 270 N.J.Super. 252, 636 A.2d 1097, 1100–01 (Law Div.1990) *aff'd*, 270 N.J.Super. 169, 636 A.2d 1054 (App.Div.1993) (holding the defendant abandoned any expectation of privacy in a locked desk and file cabinets inside his house when law enforcement were aware of the following objective facts before searching the desk and cabinets: defendant's neighbors had not seen or heard from the defendant or his family in weeks, light bulbs in the defendant's house were burning out and not being replaced, and the defendant left an envelope on the desk containing the keys to the desk and file cabinets and a note instructing the finder of the note to "contact the proper authorities").

In the case *sub judice*, the trial court admitted evidence obtained from Brown's cell phone, finding any expectation of privacy Brown had in the phone had been abandoned by the time the police searched it. All the evidence presented during the suppression hearing supports the trial court's conclusion. The State's witnesses testified the phone had been in police custody for at least five days. Brown did not dispute that the phone was found in a private residence shortly after the residence was burglarized. The phone did not belong to anyone who lived at or frequented the residence, and no evidence of any attempts to reclaim the phone after it was confiscated by the police was presented. When Detective Lester made the decision to unlock the phone several days later, he was aware of these circumstances, all of which, when considered together, provided sufficient objective facts to support his belief that any expectation of privacy in the phone and its data had been abandoned. *See Tugwell*, 125 F.3d at 602 (explaining whether one has abandoned an expectation of privacy "is determined on the basis of the *objective facts available to the investigating officers, not on the basis of the*

*owner's subjective intent* " (emphasis added)); *Daggs,* 34 Cal. Rptr.3d at 652 ("[T]he intent to abandon is determined by objective factors, not the defendant's subjective intent. Abandonment is primarily a question of intent, and intent may be inferred from words, acts, and other *objective* facts." (internal quotation marks omitted)).

The dissent distinguishes *Oswald* on the basis that a cell phone contains much more information than a locked briefcase is capable of containing. However, this misses the point because it is not the volume of a locked container's contents that determines whether or not the container and its contents have been abandoned under the Fourth Amendment. *See Riley,* 134 S.Ct. at 2494 (discussing the massive storage capabilities of modern cell phones but acknowledging "case-specific exceptions may still justify a warrantless search of a" cell phone). Rather, it is the objective indicia of the owner's intent, viewed from the perspective of law enforcement, to forgo protecting the container or its contents that determines whether the owner has abandoned them. *See Tugwell,* 125 F.3d at 602 (explaining whether one has abandoned an expectation of privacy "is determined on the basis of the *objective facts available to the investigating officers, not on the basis of the owner's subjective intent* " (emphasis added)); *Taylor,* 401 S.C. at 119, 736 S.E.2d at 670–71 (stating "[w]hether a Fourth Amendment violation has occurred turns on an *objective assessment* of [an officer's] actions in light of the facts and circumstances confronting him at the time" (second alteration by court) (emphasis added) (internal quotation marks omitted)). Locking a container does not erase these objective indicia because the act of locking the container merely demonstrates to a law enforcement officer that the owner of the container *started out* with an expectation of privacy in the container's contents. One may start out with a desire to protect the container's contents only to later abandon the container and its contents upon experiencing a superior desire to avoid being arrested for a crime. *See Oswald,* 783 F.2d at 667 ("[A] guilty conscience cannot create an expectation of privacy that would not otherwise exist."). This is precisely what the circuit court held when it ruled that Brown had a reasonable expectation of privacy in the phone but later abandoned that expectation by discarding the phone.

Whether a container is locked or unlocked, once a reasonable amount of time in which to claim the container and its contents has passed, an objective assessment of the circumstances leads a law enforcement officer to the inescapable conclusion that the owner of the container has abandoned the container and its contents. *See United States v. Basinski*, 226 F.3d 829, 836 (7th Cir.2000) ("Because this is an objective test, it does not matter whether the defendant harbors a desire to later reclaim an item; we look solely to the external manifestations of his intent as judged by a reasonable person possessing the same knowledge available to the government agents."); *Oswald*, 783 F.2d at 667 ("Where an ordinary person could fairly be said to have abandoned his privacy interests by failing to come forward, a reasonable expectation of privacy cannot be thought to have been retained solely by virtue of the fact that the person happens to be guilty of a crime."). More specifically, in the case of a smartphone, the mere use of a passcode does not always lead law enforcement to conclude the owner of the phone retained an expectation of privacy in the phone and its contents when other objective facts to the contrary are available.

Accordingly, consistent with our standard of review, we hold the trial court properly admitted evidence obtained from Brown's cell phone because all the evidence offered at the suppression hearing established that at the time Detective Lester searched Brown's cell phone, objective facts supported his belief that Brown had abandoned any expectation of privacy in the phone and its data, and therefore, Detective Lester was not required to obtain a warrant before searching the phone. *See Brockman*, 339 S.C. at 66, 528 S.E.2d at 666 (explaining a trial court's Fourth Amendment suppression ruling must be affirmed if supported by any evidence); *Dupree*, 319 S.C. at 457, 462 S.E.2d at 281 (explaining "[a]bandoned property has no protection *from either the search or seizure provisions* of the Fourth Amendment" (emphasis added)). As a result, we affirm the trial court's denial of Brown's motion to suppress evidence obtained from the warrantless search of his cell phone based on the abandonment exception to the warrant requirement.

## CONCLUSION

We hold, based on our standard of review, the State presented evidence at the suppression hearing that supported the trial court's finding of abandonment. Thus, we affirm the trial court's decision to admit evidence obtained from the warrantless search of Brown's cell phone.[6]

**AFFIRMED.**

GEATHERS, J., concurs.

KONDUROS, J., dissenting.

I respectfully dissent. I would find Brown did not abandon his expectation of privacy in the contents of his cell phone and therefore, law enforcement's warrantless search violated the Fourth Amendment.

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...." U.S. Const. amend. IV. Generally, "a warrantless search is per se unreasonable and violative of the Fourth Amendment," unless an exception applies. *State v. Morris*, 411 S.C. 571, 580, 769 S.E.2d 854, 859 (2015).

The doctrine of abandonment, which our supreme court has recognized as an exception to the warrant requirement, provides "[a]bandoned property has no protection from either the search or seizure provisions of the Fourth Amendment." *State v. Dupree*, 319 S.C. 454, 457, 462 S.E.2d 279, 281 (1995). In determining whether property has been abandoned in the Fourth Amendment search and seizure context,

the question is whether the defendant has, in discarding the property, relinquished his reasonable expectation of privacy so that its seizure and search is reasonable within the limits of the Fourth Amendment. In essence, what is abandoned

---

6. The State also argues the evidence obtained from Brown's cell phone was admissible pursuant to the independent source doctrine. Because we conclude the evidence was admissible under the abandonment exception to the warrant requirement, we need not address the State's independent source argument. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues on appeal when its determination of a prior issue is dispositive).

is not necessarily the defendant's property, but his reasonable expectation of privacy therein.

*Id.* (internal quotation marks omitted).

The United States Supreme Court recently held law enforcement must generally obtain a warrant before searching the contents of a cell phone seized pursuant to a search incident to arrest. *Riley v. California,* —— U.S. ——, 134 S.Ct. 2473, 2493–95, 189 L.Ed.2d 430 (2014). The Court's "answer to the question of what police must do before searching a cell phone seized incident to an arrest is accordingly simple—get a warrant." *Id.* at 2495. In distinguishing other physical objects obtained during searches incident to arrest, the Court recognized the unique nature of modern cell phones, their capacity for storage of vast amounts of personal information on devices easily carried, and the resulting privacy concerns triggered. *Id.* at 2488–91. Although *Riley* focused on how the search incident to arrest doctrine applies to modern cell phones, the decision provides guidance on the protection of privacy interests under the Fourth Amendment given substantial advancements in technology. *Id.* (noting modern cell phones may store an immense range of sensitive personal information and a search of a cell phone "would typically expose to the government far *more* than the most exhaustive search of a house").

In my opinion, Brown did not relinquish his reasonable expectation of privacy in the *contents* of the phone merely by its discovery at the scene of a crime, especially in light of the presence of a passcode on the phone. In addition, the lack of any exigency justifying a warrantless search and the ease with which law enforcement could have obtained a warrant demonstrates further the need to comply with the warrant requirement.

I disagree with the majority's reliance on *United States v. Oswald,* 783 F.2d 663 (6th Cir.1986), and on *People v. Daggs,* 133 Cal.App.4th 361, 34 Cal.Rptr.3d 649 (2005), in affirming the trial court's conclusion. The events in *Oswald* do not involve a cell phone and occurred decades before the technology on which modern cell phones are based was fully conceivable. 783 F.2d at 663–65; *see also Riley,* 134 S.Ct. at 2484 ("Both phones [at issue in the case] are based on technology

nearly inconceivable just a few decades ago."). What the defendant in *Oswald* abandoned—a locked briefcase inside the trunk of a burned—out automobile left next to the interstate-is substantially different from a cell phone discovered at the scene of a crime. 783 F.2d at 663–64. While tangible items similar to those digitally contained on a cell phone, such as photographs, contact information, and correspondence, may be stored in a briefcase, it is significantly limited compared to what may be stored on a cell phone. *Riley*, 134 S.Ct. at 2489–90.

In addition, the law enforcement officers in *Daggs* did not access the data contained on the cell phone discovered at the scene of a crime but instead procured the phone's electronic serial number by removing the battery. 34 Cal.Rptr.3d at 650–51. Unlike opening a passcode-locked phone without first obtaining a warrant, removing the battery to the cell phone to discover a serial number does not intrude upon a person's extensive private information that may be stored therein. *Id.* Moreover, the officers in *Daggs* used the serial number to obtain a warrant for the subscriber's name, telephone number, and telephone records, which led to the identification of the defendant. *Id.* at 651.

By contrast, the officers in the present case possessed the phone for nearly a week before unlocking it by a "lucky guess," yet did not seek a warrant, which likely would have been granted given that the cell phone was discovered at the scene of a burglary and did not belong to any of the residents. The officers' delay in accessing the cell phone belies the presence of any exigent circumstances justifying the warrant-less intrusion. *See Riley*, 134 S.Ct. at 2494 (stating exigent circumstances may justify a warrantless search of a cell phone). As the majority notes, after unlocking the phone six days after the burglary, the lead detective searched through the contacts list until he found a relative, "Grandma," from whose number he then obtained a list of relatives and age ranges from a comprehensive database. The detective then compared photographs for driver's licenses in the records of the DMV to the background picture on the cell phone until he discovered a match. This match directly identified and led the officers to Brown. The evidence leading the officers to Brown was found entirely through the warrantless search of the

phone and is the only evidence connecting Brown to the burglary. Law enforcement did not find Brown's fingerprints on the cell phone or at the crime scene, nor did a search of Brown's residence uncover any of the stolen items.

The Court in *Riley* made clear its holding "is not that the information on a cell phone is immune from search; it is instead that a warrant is generally required before such a search, *even* when a cell phone is seized incident to arrest." *Id.* at 2493 (emphasis added). In my opinion, the Court's language indicates law enforcement must obtain warrants to search cell phones, even in cases when a person's expectation of privacy is diminished, absent the applicability of an exception. *See id.* at 2488 ("[W]hen privacy-related concerns are weighty enough a search may require a warrant, notwithstanding the diminished expectations of privacy of the arrestee." (internal quotation marks omitted)). The existence of the passcode also displays an expectation of privacy in the contents of the phone, and the simplicity of Brown's passcode of "1–2–3–4" does not negate law enforcement's need to obtain a warrant. While under these circumstances I would not find a reasonable expectation of privacy existed in the physical object of the phone, I believe a person preserves their reasonable expectation of privacy in its *contents,* which is precisely what provides a phone its significance.

For the foregoing reasons, I believe Brown did not abandon his reasonable expectation of privacy in the contents of the phone and law enforcement's warrantless search violated the Fourth Amendment. The trial court therefore erred in failing to exclude the evidence obtained from the warrantless search, and I would reverse and remand for a new trial.