# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Lamar Sequan Brown, Petitioner.

Appellate Case No. 2015-002360

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Charleston County
J. C. Nicholson Jr., Circuit Court Judge

---

Opinion No. 27814
Heard March 28, 2018 – Filed June 13, 2018

---

## AFFIRMED

---

Appellate Defender David Alexander, of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson, Assistant Attorney General William M. Blitch Jr., both of Columbia; and Solicitor Scarlett Anne Wilson, of Charleston; all for Respondent.

---

**JUSTICE FEW**: In this appeal we address whether the digital information stored on a cell phone may be abandoned such that its privacy is no longer protected by the Fourth Amendment. The trial court determined the information on the cell phone in

this case had been abandoned, and admitted it into evidence. A divided panel of the court of appeals affirmed. *State v. Brown*, 414 S.C. 14, 776 S.E.2d 917 (Ct. App. 2015). We affirm the court of appeals.

## I.    Facts and Procedural History

On December 22, 2011, one of the victims and his girlfriend returned from dinner to his condominium on James Island in the city of Charleston. The victim testified they went straight to the living room because "I had arranged all of her Christmas presents . . . on the center coffee table." While she was opening the presents, he heard a phone ringing down the hall toward the bedrooms. Initially, he assumed the phone belonged to his roommate or her boyfriend. After the phone rang a few times, he saw a light and feared it might be someone with a flashlight. He testified, "I got a little nervous so I got up and told my girlfriend to stay in the living room and I walked down the hall and [saw] the ringing phone . . . on my bedroom floor." When he turned on his bedroom light, he realized his home had been burglarized. His "window had been broken out" and there was "glass everywhere." The burglar stole his television, his laptop computer, two of his roommate's laptops, and some of her jewelry.

The victim called the police. The first officer on the scene took the cell phone to the police station and secured it in a locker in the evidence room. Six days later, Detective Jordan Lester retrieved the cell phone and was able to observe "a background picture of a black male with dreadlocks." Considering the phone to be "abandoned property," he guessed the code to unlock the screen—1-2-3-4—and opened the phone without a warrant. Detective Lester looked through the "contacts" stored on the phone and found a person listed as "Grandma." He entered "Grandma's" phone number into a database called Accurint and identified a list of her relatives, which included a man matching the age of the person pictured on the background screen of the cell phone—Lamar Brown. Detective Lester then entered Brown's name into the South Carolina Department of Motor Vehicles database and looked at Brown's driver's license photograph. After comparing the photographs, Detective Lester determined Brown was the man pictured on the screen of the cell phone.

Detective Lester sent other officers to Brown's home to question him. The officers showed Brown the cell phone and informed him it was found at the scene of a burglary. Brown admitted the phone belonged to him, but claimed he lost it on December 23rd—one day after the burglary occurred. Brown also admitted that no

one else could have had his cell phone on December 22nd. After questioning Brown, the police charged him with burglary in the first degree.

At trial, Brown's counsel moved to suppress all evidence obtained from the cell phone on the ground Detective Lester conducted an unreasonable search of the phone in violation of Brown's Fourth Amendment rights. The trial court found Brown had no reasonable expectation of privacy in the information stored on the phone because he abandoned it. The jury convicted Brown of first-degree burglary, and the trial court sentenced him to eighteen years in prison. We granted Brown's petition for a writ of certiorari to review the court of appeals' opinion affirming his conviction.

## II.    Analysis

The Fourth Amendment guarantees us the right to be free from unreasonable searches and seizures. U.S. CONST. amend. IV; *see also* S.C. CONST. art. I, § 10. "Abandoned property," however, "has no protection from either the search or seizure provisions of the Fourth Amendment." *State v. Dupree*, 319 S.C. 454, 457, 462 S.E.2d 279, 281 (1995) (citing *California v. Greenwood*, 486 U.S. 35, 40-41, 108 S. Ct. 1625, 1628-29, 100 L. Ed. 2d 30, 36-37 (1988)). Under a standard abandonment analysis, "the question is whether the defendant has, in discarding the property, relinquished his reasonable expectation of privacy." *Dupree*, 319 S.C. at 457, 462 S.E.2d at 281 (quoting *City of St. Paul v. Vaughn*, 237 N.W.2d 365, 371 (Minn. 1975)). As the Fourth Circuit has described it, "When a person voluntarily abandons his privacy interest in property, his subjective expectation of privacy becomes unreasonable . . . ." *United States v. Stevenson*, 396 F.3d 538, 546 (4th Cir. 2005); *see also id.* ("'[T]he proper test for abandonment is . . . whether the complaining party retains a reasonable expectation of privacy in the [property] alleged to be abandoned.'" (quoting *United States v. Haynie*, 637 F.2d 227, 237 (4th Cir. 1980))). In any Fourth Amendment challenge, "defendants must show that they have a legitimate expectation of privacy in the place searched." *State v. Missouri*, 361 S.C. 107, 112, 603 S.E.2d 594, 596 (2004) (citing *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S. Ct. 421, 430, 58 L. Ed. 2d 387, 401 (1978)). When the reasonable expectation of privacy is relinquished through abandonment, the property is no longer protected by the Fourth Amendment. *Dupree*, 319 S.C. at 457, 462 S.E.2d at 281.

Brown contends, however, the reasoning of the Supreme Court of the United States in *Riley v. California*, 573 U.S. ___, 134 S. Ct. 2473, 189 L. Ed. 2d 430 (2014), fundamentally alters the abandonment analysis when the property in question is the

digital information stored on a cell phone.  In *Riley*, the Supreme Court described in extensive detail the manner in which "[c]ell phones differ in both a quantitative and a qualitative sense from other objects that might be kept on an arrestee's person." 573 U.S. at ___, 134 S. Ct. at 2489, 189 L. Ed. 2d at 446.  Among the many observations the Court made to explain these differences, the Court stated, "many of the more than 90% of American adults who own a cell phone keep on their person a digital record of nearly every aspect of their lives—from the mundane to the intimate," 573 U.S. at ___, 134 S. Ct. at 2490, 189 L. Ed. 2d at 447, "Data on a cell phone can also reveal where a person has been[,] . . . and can reconstruct someone's specific movements down to the minute, . . . within a particular building," 573 U.S. at ___, 134 S. Ct. at 2490, 189 L. Ed. 2d at 448, and "a cell phone search would typically expose to the government far *more* than the most exhaustive search of a house," 573 U.S. at ___, 134 S. Ct. at 2491, 189 L. Ed. 2d at 448.  The Court concluded, "Modern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans 'the privacies of life.'"  573 U.S. at ___, 134 S. Ct. at 2494-95, 189 L. Ed. 2d at 452 (quoting *Boyd v. United States*, 116 U.S. 616, 630, 6 S. Ct. 524, 532, 29 L. Ed. 746, 751 (1886)).

We certainly agree with Brown that the reasoning of *Riley* is important to the Fourth Amendment analysis any time the police conduct a warrantless search of the digital information on a cell phone.  We find, however, that *Riley* does not alter the standard abandonment analysis.[1]  Rather, the unique character of cell phones described in *Riley* is one factor a trial court should consider when determining whether the owner has relinquished his expectation of privacy.

Turning to the abandonment analysis the trial court conducted in this case, we review the trial court's decision for clear error.  *State v. Moore*, 415 S.C. 245, 251, 781

---

[1] Other courts have considered whether the digital information stored on a cell phone may be abandoned for purposes of the Fourth Amendment and found that it had been abandoned.  *See United States v. Crumble*, 878 F.3d 656, 659-60 (8th Cir. 2018) (holding the warrantless search of a cell phone did not violate the Fourth Amendment because the defendant abandoned it); *United States v. Sparks*, 806 F.3d 1323, 1347 (11th Cir. 2015) (same); *State v. Samalia*, 375 P.3d 1082, 1089 (Wash. 2016) (same); *but see State v. K.C.*, 207 So. 3d 951, 956 (Fla. Dist. Ct. App. 2016) (holding that "a categorical rule permitting warrantless searches of abandoned cell phones, the contents of which are password protected, is . . . unconstitutional" (relying on *Brown*, 414 S.C. at 32, 776 S.E.2d at 927 (Konduros, J., dissenting))).

S.E.2d 897, 900 (2016). This means we "must affirm if there is any evidence to support the trial court's [factual] ruling," 415 S.C. at 251, 781 S.E.2d at 900, but we "review[] questions of law de novo," *State v. Adams*, 409 S.C. 641, 647, 763 S.E.2d 341, 344 (2014).

We begin our review of the trial court's finding that Brown abandoned his phone with the factual premise of *Riley*, that cell phones hold "the privacies of life." 573 U.S. at ___, 134 S. Ct. at 2494-95, 189 L. Ed. 2d at 452. Brown's expectation that this privacy would be honored—at least initially—is supported by the fact he put a lock on the screen of the phone. As the court of appeals in this case stated, "the act of locking the container . . . demonstrates to a law enforcement officer that the owner of the container *started out* with an expectation of privacy in the container's contents." 414 S.C. at 27, 776 S.E.2d at 924. At least until the time of the burglary, therefore, Brown enjoyed Fourth Amendment protection for the digital information stored on his phone.

Additionally, we can presume Brown did not intentionally leave his cell phone at the scene of the crime, for he must have known that doing so would lead to the discovery that he was the burglar. Thus, it is unlikely a police officer would believe the mere act of leaving the phone at the scene of the crime was an intentional relinquishment of his privacy. For at least a short period of time after the crime, therefore, the phone might not yet have been abandoned. However, when a person loses something of value—whether valuable because it is worth money or because it holds privacies— the person who lost it will normally begin to look for the item. In this case, the phone sat in the evidence locker at the police station for six days. The record contains no evidence Brown did anything during this time to try to recover his phone. While Brown might have taken action to protect his privacy before he left it at the victim's condominium, there is no evidence he did anything after that to retain the privacy he previously had in the phone's digital contents. There is no evidence he tried to call the phone to see if someone would answer. There is no evidence he attempted to text the phone in hopes the text would show on the screen, perhaps with an alternate number where Brown could be reached, or perhaps even with a message that he did not relinquish his privacy in the contents of the phone.[2] There is no evidence he attempted to contact the service provider for information on the whereabouts of the phone. Instead, he contacted his service provider and canceled

---

[2] Brown's phone received numerous calls and texts after Brown left it at the scene of the burglary. However, there is no evidence Brown made or initiated any of those calls or texts.

his cellular service to the phone. And there is certainly no evidence he went back to the scene of the crime to look for it, or that he attempted to call the police to see if they had it.

We would expect that a person who lost a cell phone that has value because of the privacies it holds would look for the phone in one or more of the ways described above. On the other hand, the reason a burglar would not look too hard to find a phone he lost during a burglary is obvious. Brown put himself in the difficult position of having to balance the risk that finding the phone would incriminate him against the benefit of retrieving the private digital information stored in it. Looking at these facts objectively, any police officer would assume after six days of no efforts by the owner to recover this phone—especially under the circumstance that the owner left the phone at the scene of a burglary—that the owner had decided it was too risky to try to recover it. Brown's decision not to attempt to recover the phone equates to the abandonment of the phone.

"A legitimate expectation of privacy is both subjective and objective in nature: the defendant must show (1) he had a subjective expectation of not being discovered, and (2) the expectation is one that society recognizes as reasonable." *Missouri*, 361 S.C. at 112, 603 S.E.2d at 596 (citing *Oliver v. United States*, 466 U.S. 170, 177, 104 S. Ct. 1735, 1741, 80 L. Ed. 2d 214, 223 (1984)). As to the first point, Brown's decision to forego looking for his phone demonstrates he did not expect to maintain his privacy in the information stored on his phone. In addition—although it is not clear Detective Lester knew this when he opened the phone—Brown told the officer who first interviewed him that he canceled cellular service to the phone when he realized "someone has [my] phone."[3] Considering these facts, Brown clearly had no "subjective expectation" that his privacy in the digital information on the phone would be preserved.

Brown even more clearly fails on the second point. Here, we pause to consider the reasoning of Judge Konduros—the dissenting judge at the court of appeals. Judge Konduros correctly points out that *Riley* "recognized the unique nature of modern cell phones, their capacity for storage of vast amounts of personal information on devices easily carried, and the resulting privacy concerns triggered," and "the decision provides guidance on the protection of privacy interests under the Fourth Amendment given substantial advancements in technology." 414 S.C. at 30, 776

---

[3] Brown's statement is inconsistent with the records of his cell phone provider, which indicate the service was not officially canceled until later.

S.E.2d at 926 (Konduros, J., dissenting). With this reasoning, Judge Konduros properly brings our focus back to the factual premise of *Riley*—cell phones hold "the privacies of life." 573 U.S. at ___, 134 S. Ct. at 2494-95, 189 L. Ed. 2d at 452. From this premise, Judge Konduros correctly concludes "the Court's language indicates law enforcement must obtain warrants to search cell phones, even in cases when a person's expectation of privacy is diminished." 414 S.C. at 32, 776 S.E.2d at 927 (Konduros, J., dissenting).

In our abandonment analysis, however, the question is not whether Brown's expectation of privacy was "diminished." Rather, the question before us is whether Brown could reasonably expect to maintain any privacy interest in his phone after he chose to cancel cellular service and stop looking for it. More specifically, the question on this second point from *Missouri* is whether society will recognize as reasonable that a burglar who leaves his cell phone in a home he just robbed, and thereafter cancels service to the phone and makes no effort to recover it, nevertheless maintains a privacy interest under the Fourth Amendment in the digital information stored on the phone. Viewing the question in this posture, even considering the valid reasoning of Judge Konduros, the answer to the question is clearly, "No." The idea that a burglar may leave his cell phone at the scene of his crime, do nothing to recover the phone for six days, cancel cellular service to the phone, and then expect that law enforcement officers will not attempt to access the contents of the phone to determine who committed the burglary is not an idea that society will accept as reasonable.

To summarize, we turn to the majority opinion from the court of appeals, which we believe correctly concludes the abandonment analysis,

> When Detective Lester made the decision to unlock the phone several days later, he was aware of these circumstances, all of which, when considered together, provided sufficient objective facts to support his belief that any expectation of privacy in the phone and its data had been abandoned.

414 S.C. at 26, 776 S.E.2d at 924.

## III.   Conclusion

Modern cell phones are not just another item of property, and the extent to which they "differ in both a quantitative and a qualitative sense from other objects" is an

important factor to be considered in any abandonment analysis.  Nevertheless, the standard abandonment analysis applies to cell phones.  There is evidence in the record to support the trial court's finding that Brown abandoned his cell phone.  The decision of the court of appeals is **AFFIRMED**.

**KITTREDGE, HEARN and JAMES, JJ., concur.  BEATTY, C.J., dissenting in a separate opinion.**

**CHIEF JUSTICE BEATTY:** I respectfully dissent. I would reverse the decision of the Court of Appeals and find, as did Judge Konduros in her well-reasoned dissent, Brown did not abandon his expectation of privacy in the contents of his cell phone. Accordingly, I would conclude that law enforcement's warrantless search of Brown's cell phone violated the Fourth Amendment.

The Fourth Amendment to the United States Constitution protects a person's right to be free from unreasonable searches and seizures. U.S. Const. amend. IV. "Warrantless searches and seizures are unreasonable absent a recognized exception to the warrant requirement." *State v. Brown*, 401 S.C. 82, 89, 736 S.E.2d 263, 266 (2012) (citation omitted). The State bears the burden of establishing "the existence of circumstances constituting an exception to the general prohibition against warrantless searches and seizures." *State v. Gamble*, 405 S.C. 409, 416, 747 S.E.2d 784, 787 (2013).

We have recognized the doctrine of abandonment as an exception to the Fourth Amendment warrant requirement. *State v. Dupree*, 319 S.C. 454, 457, 462 S.E.2d 279, 281 (1995). In determining whether the defendant abandoned property for Fourth Amendment search and seizure purposes,

> the question is whether the defendant has, in discarding the property, relinquished his reasonable expectation of privacy so that its seizure and search is reasonable within the limits of the Fourth Amendment. In essence, what is abandoned is not necessarily the defendant's property, but his reasonable expectation of privacy therein.

*Id.* (citation omitted). To answer this question, a court "must determine from an objective viewpoint whether property has been abandoned." 79 C.J.S. *Searches* § 43, at 70 (2017). "[A]bandonment is a question of intent and exists only if property has been voluntarily discarded under circumstances indicating no future expectation of privacy with regard to it." 68 Am. Jur. 2d *Searches and Seizures* § 23, at 135 (2010). Intent in this context is "inferred from words, acts, and other objective facts." 79 C.J.S. *Searches* § 43, at 70 (2017).

In my view, this case presents the Court with an opportunity to consider the continued validity of the doctrine of abandonment with respect to passcode-protected digital information in a post-*Riley* era. In *Riley*, the Supreme Court of the United States consolidated two cases to determine "whether the police may, without

a warrant, search digital information on a cell phone seized from an individual who has been arrested." *Riley v. California*, 134 S. Ct. 2473, 2480 (2014). In a unanimous decision authored by Chief Justice Roberts, the Court answered this question in the negative. *Id.* at 2485. More specifically, the Court concluded "[o]ur answer to the question of what police must do before searching a cell phone seized incident to an arrest is accordingly simple—*get a warrant*." *Id.* at 2495 (emphasis added).

In reaching this conclusion, the Court prefaced its analysis by stating:

> Absent more precise guidance from the founding era, we generally determine whether to exempt a given type of search from the warrant requirement "by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Wyoming v. Houghton*, 526 U.S. 295, 300, 119 S. Ct. 1297, 143 L. Ed. 2d 408 (1999).

*Id.* at 2484. Using this analytical framework, the Court reasoned that:

> while *Robinson*'s[4] categorical rule strikes the appropriate balance in the context of physical objects, neither of its rationales has much force with respect to digital content on cell phones. On the government interest side, *Robinson* concluded that the two risks identified in *Chimel*[5]—harm to officers and destruction of evidence—are present

---

[4]  *United States v. Robinson*, 414 U.S. 218 (1973) (concluding that, following a custodial arrest, the warrantless search of defendant's person, the inspection of a crumpled cigarette package found on defendant's person, and the seizure of heroin capsules found in the package were permissible under the Fourth Amendment).

[5]  *Chimel v. California*, 395 U.S. 752, 763 (1969) (holding that a search incident to an arrest may only include "the arrestee's person and the area 'within his immediate control'–construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence"), *abrogated by Arizona v. Gant*, 556 U.S. 332 (2009) (concluding search of defendant's vehicle, while defendant was handcuffed  and locked in the back of a patrol car following an arrest for driving with a suspended license, did not fall within the search incident to arrest exception to the Fourth Amendment's warrant requirement as the safety and evidentiary justifications underlying *Chimel*'s reaching-distance rule were not present).

in all custodial arrests. There are no comparable risks when the search is of digital data. In addition, *Robinson* regarded any privacy interests retained by an individual after arrest as significantly diminished by the fact of the arrest itself. Cell phones, however, place vast quantities of personal information literally in the hands of individuals. A search of the information on a cell phone bears little resemblance to the type of brief physical search considered in *Robinson*.

We therefore decline to extend *Robinson* to searches of data on cell phones, and *hold instead that officers must generally secure a warrant before conducting such a search*.

*Id*. at 2484–85 (emphasis added).

Although the Court issued this categorical rule, it noted that "other case-specific exceptions," primarily the exigent circumstances exception, "may still justify a warrantless search of a particular phone." *Id*. at 2494. The Court explained, "[t]he critical point is that, unlike the search incident to arrest exception, the exigent circumstances exception requires a court to examine whether an emergency justified a warrantless search in each particular case." *Id*.

In my view, the majority fails to appreciate the full import of the *Riley* decision. While the majority discusses *Riley*, it concludes that "*Riley* does not alter the standard abandonment analysis." By narrowly construing the holding, the majority finds "the unique character of cell phones described in *Riley* is one factor a trial court should consider when determining whether the owner has relinquished his expectation of privacy."

In contrast to the majority, I believe *Riley* creates a categorical rule that, absent exigent circumstances, law enforcement must procure a search warrant before searching the data contents of a cell phone. Even though the decision in *Riley* arose out of a search incident to an arrest, I discern no reason why the Supreme Court's rationale is not equally applicable with respect to the abandonment exception to the Fourth Amendment. I believe the defendant's expectation of privacy in the digital contents of a cell phone remains the same in either context.

As one legal scholar explained:

the logic behind the Supreme Court's need to protect cell phones during arrests applies just as convincingly to cell phones left behind by their

users. Categorically, the Supreme Court clearly identified that cell phones "implicate privacy concerns far beyond those implicated by the search" of any other nondigital physical item or container because of cell phones' immense storage capacity and variety of detailed information. The same invasion of privacy occurs during a warrantless search of a cell phone, regardless of whether that phone is found during an arrest or left behind by its owner. In light of the modern developments of personal technological devices and the Court's analysis in *Riley*, courts should develop a carve-out for cell phones from the abandonment exception to the Fourth Amendment and require police officers to obtain a search warrant before searching cell phones left behind by their owners.

Abigail Hoverman, Note, *Riley and Abandonment: Expanding Fourth Amendment Protection of Cell Phones*, 111 Nw. U. L. Rev. 517, 543 (2017) (footnote omitted).

I agree with this assessment and believe that any interpretation limiting the holding in *Riley* effectively negates its precedential value. *See State v. K.C.*, 207 So. 3d 951, 956 (Fla. Dist. Ct. App. 2016) (analyzing *Riley* and holding that "a categorical rule permitting warrantless searches of abandoned cell phones, the contents of which are password protected, is . . . unconstitutional (relying on *Brown*, 414 S.C. at 32, 776 S.E.2d at 927 (Konduros, J., dissenting) and *State v. Samalia*, 375 P.3d 1082, 1091-96 (Wash. 2016) (*en banc*) (Yu, J., dissenting))).

However, even accepting the majority's narrow interpretation of *Riley*, I would find the State failed to establish the abandonment exception to the Fourth Amendment warrant requirement.

As the majority recognizes, Brown did not voluntarily discard his cell phone. Brown also placed a passcode on his cell phone to protect his personal information from unauthorized access. *See K.C.*, 207 So. 3d at 955 (concluding that contents of defendant's cell phone, which was left in a stolen vehicle, were still protected by a password given "the password protection that most cell phone users place on their devices is designed specifically to prevent unauthorized access to the vast store of personal information which a cell phone can hold when the phone is out of the owner's possession"). Brown never relinquished this passcode.

Further, unlike the majority, I believe there is evidence that Brown attempted to locate his phone. Notably, the victim was drawn to the bedroom by the sound of the ringing cell phone. During his testimony, the victim stated that the phone rang

"over and over and over." The cell phone records reflect that these calls and text messages were initiated by individuals known to Brown as they were identified in the contact list stored on his cell phone. The cell phone records also reflect that the phone received calls and text messages from the evening of December 22, 2011, until at least January 3, 2012. Without evidence to the contrary, one can only infer that Brown initiated these contacts in order to find his cell phone. Additionally, on January 22, 2012, Brown contacted the cell phone service provider to discontinue service on the cell phone. By discontinuing cell phone service, Brown deactivated the lost cell phone to prevent the use of and access to the phone. Also, when questioned by law enforcement, Brown never disclaimed ownership of the cell phone.

In my view, these objective facts demonstrate Brown's intent to retain his expectation of privacy in the contents of his cell phone. *See* 79 C.J.S. *Searches* § 43, at 70 (2017) (noting that a court, when determining whether property has been abandoned in the context of search and seizure analysis, must look at the "totality of the circumstances, paying particular attention to explicit denials of ownership and to any physical relinquishment of the property"). Because there were no exigent circumstances presented, I would find law enforcement was required to obtain a warrant prior to the search of Brown's cell phone.

This decision in no way limits the ability of law enforcement to access the data contents of a cell phone that is unintentionally discarded near or at the scene of a crime. Rather, as explained by Chief Justice Roberts in *Riley*, it "is not that the information on a cell phone is immune from search; it is instead that a warrant is generally required before such a search, even when a cell phone is seized incident to arrest." *Riley*, 134 S. Ct. at 2493.

Finally, I believe my conclusion effectuates the intent of *Riley*, but, even more importantly, ensures the heightened level of protection afforded by the express right to privacy found in the South Carolina Constitution. *See* S.C. Const. art. I, § 10 ("The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures and unreasonable invasions of privacy shall not be violated . . . ."); *State v. Weaver*, 374 S.C. 313, 322, 649 S.E.2d 479, 483 (2007) ("By articulating a specific prohibition against 'unreasonable invasions of privacy,' the people of South Carolina have indicated that searches and seizures that do not offend the federal Constitution may still offend the South Carolina Constitution. Accordingly, the South Carolina Constitution favors an interpretation offering a higher level of privacy protection than the Fourth Amendment." (citation omitted)).

Based on the foregoing, I would find the trial court erred in denying Brown's motion to suppress as law enforcement's warrantless search violated the Fourth Amendment. Accordingly, I would reverse the decision of the Court of Appeals.