979 So.2d 1197 (2008)
Terry LEWIS, Appellant,
v.
STATE of Florida, Appellee.
No. 4D07-976.
District Court of Appeal of Florida, Fourth District.
April 23, 2008.
*1198 Carey Haughwout, Public Defender, and John M. Conway, Assistant Public Defender, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Jeanine M. Germanowicz, Assistant Attorney General, West Palm Beach, for appellee.
WARNER, J.
In denying appellant's motion to suppress, the trial court expressed the view that once two officers testified to facts which would prove that the search of appellant was consensual, the burden shifted to the appellant to prove that he did not consent to the search. We reverse, because the trial court erred in shifting the burden instead of determining the issue based upon the totality of the circumstances, including weighing the credibility of the officers' testimony, which the court itself questioned.
The state charged Lewis with use or possession of drug paraphernalia in violation of section 893.147(1), Florida Statutes (2005), and possession of cocaine in violation of section 893.13(6)(a), Florida Statutes (2005). Lewis moved to suppress the evidence, claiming it was the product of an illegal search.
At the suppression hearing on Lewis's motion, the state elicited testimony from Detective Gillette of the Fort Pierce Police Department and Detective Oliver of the St. Lucie County Sheriff's Office. On the night of the arrest, the officers were patrolling in an unmarked vehicle as part of a street level narcotics crime operation. They spotted Lewis riding a bicycle with no headlight. Based on this violation, the officers pulled alongside Lewis and said, "Police Department, please stop the bike."
While Lewis was still on the bicycle, Gillette asked him, in a conversational tone, "if he had any guns, weapons, or drugs, or anything else that [Gillette] needed to know about while [Gillette] was talking to him." Lewis answered in the negative. Gillette testified that he followed up by asking, "Just for my safety and yours, while we're standing here talking like this, you mind if I do a quick pat down for any weapons or drugs." Lewis answered, "Yeah, okay."
Lewis straddled the bicycle and spread his arms. While running the palm of his hand over areas where weapons are commonly concealed, Gillette felt "a hard cylindrical object . . . over [Lewis's] left front pant pocket." Based on Gillette's knowledge and experience, he immediately thought "it could be a pipe used for smoking crack cocaine." Gillette asked Lewis "what the object was [that he] was feeling" and Lewis responded, "It's a stem." Gillette testified that "stem" is slang for "crack pipe, or a pipe used to smoke crack cocaine."
Gillette removed the object from Lewis's pocket and confirmed that the item was a crack pipe, as it had burn residue and a wire mesh filter. Gillette arrested and handcuffed Lewis. During a search incident to arrest, Deputy Ruggeri found several small bags of a powdered substance which turned out to be cocaine.
Through cross-examination, Lewis's counsel brought out the fact that the arrest affidavit written that night stated that "Detective Gillette advised the subject that he was going to pat him down for weapons. The defendant stated okay." (emphasis supplied). Gillette testified that he "did *1199 not say to Mr. Lewis `I'm going to pat you down'" but instead asked whether Lewis had anything on his person about which the officers should know.
Detective Oliver testified that "Detective Gillette asked Mr. Lewis if he has any drugs, weapons or knives on him." Oliver admitted that he did not word the question in the police report as it was actually posed. Oliver explained, "The reason why I used `advised' instead of `asked' is . . . advised to me is actually asking the Defendant a question . . . all my reports are written that way."
The defendant did not testify at the suppression hearing.
The court concluded that the initial stop for riding a bicycle with no headlight was valid. Because the parties agreed that the pat-down was not supported by reasonable suspicion or probable cause, its validity turned on whether Lewis freely and voluntarily consented. The court was clearly troubled by the inconsistent testimony from the detectives. The court said:
In this case, II tried to avoid the issue of whether or not he was "advised" or "asked," now tofor permission to perform the consent search. But, I will say that this is the fourth time on a Motion to Suppress I've had officers from the same agency testify completely, diametrically in opposition to what their report say[s], which so I'm trying not to rule on this case based upon that which I'm starting to get a little bit concerned about because it happens much too, much too frequen[tl]y for my sake. But in any event, ifif Iif I was dealing only with thethe testimony that he was advised tothat he was going to have a pat down search conducted . . . [t]hat would not have been a voluntary or consensual search in my view. However, both officers diddid get themselves on the same page, and say that in fact it was ait was a request for permission to conduct a pat down search. That'sthere's sworn testimony like comparison toto a report that I have in the file. So, II have to accept that, but I am concerned about it.
The court expressed its wish that Lewis had testified to clarify what went on at the stop. It then stated its ruling:
In this case, other than the appearance of the officers, and notwithstanding a written report to the contrary, the officers' testimony was that they asked him if they could serif they could conduct a pat down search, and he agreed. I was presented with no evidence to the contrary, and so although I with much trepidation have made the following finding, and Order. I do so on the basis of Chapman versus State [780 So.2d 1036 (Fla. 4th DCA 2001)]. I find that there was no evidence that the officers' conduct at the time of the request to search was confrontational, coercive, oppressive, or dominating. I am denying the Motion to Suppress on that basis. I find that the pat down was consensual.
When Lewis's counsel questioned part of the ruling, the court said:
But, if all I have to go on are the facts, and the only testimony were the police officers'. Your client didn't testify, and nobody put on anything else.
Objecting to the court's concern that Lewis did not testify, counsel stated:
The Defendant you referred to it three times did not testify. He obviously has a Fifth Amendment right not to testify, and that should not be considered by the Court in rendering its decision. Also, even further, that you should not consider that is that the burden is on the State. So if you, if the Court, and the Court just said that nothing was offered to the contrary. That's burden shifting *1200 and placing the burden on the Defendant.
In response, the court explained:
Just so you are clear, that I am not burden shifting. The State is and was required to prove that it was consensual. They offered the testimony of two witnesses who said it was. At that point it does shift. There issomething has to convince me it was not consensual once they've shown me it was. And if the only other person at that scene was the Defendant, I don't know who else was going to offer me that evidence. And II certainly burden shifting to my way of thinking is starting out with this hearing saying, "You show me that this was involuntary before I make the State prove that it was voluntary." They showed that it was voluntary. I have my concerns about that? And I have expressed for the record, and that's what they are noted. But, having provided me with un-corroborative [sic] evidence of voluntariness Iand in light of Chapman II feel constrained to make the decision I did.
(emphasis supplied). After denial of the motion to suppress, Lewis pled no contest, reserving his right to appeal the denial of the motion. The court entered final judgment and sentence, and Lewis appeals.
We reverse the trial court's order, because it improperly shifted the burden of proof to the defendant and denied suppression because the defense did not present any evidence. It failed to assess the credibility of the evidence before it, even though it expressed substantial doubts as to its credibility.
We have recently explained the shifting burden on a motion to suppress:
The initial burden on a motion to suppress an illegal search is on the defendant to make an initial showing that the search was invalid. When that prima facie showing is made, however, the burden shifts to the state to prove that the search is valid.
Miles v. State, 953 So.2d 778, 779 (Fla. 4th DCA 2007). A warrantless search constitutes a prima facie showing which shifts to the state the burden of showing the search's legality. Andress v. State, 351 So.2d 350, 350 (Fla. 4th DCA 1977). There is no case law we could find holding that the burden ever shifts back to the defendant to show that the search is illegal. Instead, the court must weigh the testimony of all the witnesses and determine the issue based upon the totality of the circumstances. The court is not required to accept at face value the testimony of any witness. As analogy, the jury is instructed at the close of the evidence:
You may rely upon your own conclusion about the witness. A juror may believe or disbelieve all or any part of the evidence or the testimony of any witness.
Fla. Std. Jury Instr. (Crim.) 3.9. A trial court has the same ability to determine the believability of a witness. The mere fact that the testimony appears "uncontradicted" does not necessarily make it believable, particularly in this case where the court itself noted that the testimony had been impeached by the report written the night of the incident as to whether Lewis was asked or advised that he would be searched.
As explained in Maurer v. State, 668 So.2d 1077, 1079 (Fla. 5th DCA 1996):
A judge acting as fact-finder is not required to believe the testimony of police officers in a suppression hearing, even when that is the only evidence presented; just as a jury may disbelieve evidence presented by the state even if it is uncontradicted, so too the judge may disbelieve the only evidence offered in a suppression hearing.
*1201 Here, the trial court did not conduct the necessary fact-finding but merely shifted the burden to the defense to produce some affirmative evidence to disprove the testimony of the officers. The defense did not have that burden, and the trial court erred in failing to weigh the evidence and determine the facts.
We reverse and remand for further proceedings. If this case will be heard by the original judge, the matter may be decided on the same record, should the judge determine that his recollection of the proceedings is sufficient to make the necessary findings; otherwise, a new hearing will be required.
STONE and FARMER, JJ., concur.