WARNER, J.
Appellant, who was convicted of possession of a firearm and ammunition by a felon, challenges the trial court’s denial of his motion to suppress the search of his apartment which resulted in the discovery of the firearm. He claims that the officer did not have a warrant or valid consent to enter the apartment. However, we agree with the trial court that appellant’s girlfriend, a co-occupant, validly consented to the officer’s entry. We therefore affirm appellant’s conviction and sentence.
Before trial, appellant filed a motion to suppress, claiming that the firearm and ammunition were obtained as a result of an illegal search and seizure at the apartment where he lived. The trial court held a suppression hearing, at which the only witness was Officer Woolley of the Margate Police Department. Officer Woolley testified that he and his training officer re *362 sponded to a 911 call regarding a domestic disturbance at an apartment in Margate. The 911 caller advised that she was in a fight with her boyfriend and that she was locked outside the apartment. During the 911 call, the caller stated that she lived at the apartment.
When Officer Woolley arrived at the location, he encountered the 911 caller, Amónica Ferrell, in the front yard of the apartment. Ms. Ferrell was wearing a long t-shirt, but no pants. She had nothing with her except for a cell phone. Officer Woolley noticed that she had obvious signs of trauma, including a fresh bruise on her eye as well as several bruises on her legs. Ms. Ferrell told the officers that she had been sleeping by herself, and that when appellant came home, they started fighting. She stated that during the argument, she started packing her things to move out of the apartment. She further explained that as she was putting her clothes in the front of the house, appellant became physically abusive and struck her several times.
The officers took Ms. Ferrell to the police station, where she gave a sworn statement. She said that she had been living at the apartment for approximately two months, and explained that nobody else lived there besides appellant and herself. She had belongings inside the apartment, including her purse, her keys, her identification, food and clothing, as well as a subpoena.
Officer Woolley took Ms. Ferrell back to the apartment, because she wanted to move out to avoid future violence. There, they entered the leasing office to see if the property management would unlock the door to the apartment. However, the property managers declined, because neither Ms. Ferrell nor appellant was listed as a tenant on the lease.[1] The property managers also told the officers that they did not recognize Ms. Ferrell as a resident.
After leaving the leasing office, the officers went back to the apartment with Ms. Ferrell. They knocked on the front door several times, but nobody answered. However, Ms. Ferrell advised the officers that the rear slider door was unlocked. Ms. Ferrell and the officers then went to the back of the apartment, where the officers pulled back the patio screen to gain access to the back sliding door. The officers then entered the back of the apartment through the slider door, which was in fact unlocked.
Ms. Ferrell stayed on the back patio area, while the officers entered the premises to see if appellant was inside. Once inside the residence, the officers found no one inside. However, the officers saw a full-sized assault weapon in plain view in the bedroom. A magazine with ammunition was attached to the rifle. Officer Woolley testified that the firearm was standing straight up against the wall at the time.
When Ms. Ferrell came into the apartment, she went directly to her purse on the kitchen counter. She reached inside and removed her personal keychain, which had a key that matched the door to the apartment. There was a court subpoena addressed to Ms. Ferrell on the refrigerator, but the address on the subpoena did not match the address of the apartment, nor did her driver’s license contain the apartment address. The officers did not see any bills or any other mail in Ms. Ferrell’s name in the apartment.
Officer Woolley also observed a large pile of clothing directly in front of the *363 door, just as Ms. Ferrell had told the officers when they first started talking to her. The amount of clothing appeared to confirm to the officer that Ms. Ferrell was a resident and not merely a casual guest.
However, to Officer Woolley’s knowledge, there were no furnishings or pictures in the apartment that belonged to Ms. Ferrell. On cross-examination, Officer Woolley acknowledged that the only things Ms. Ferrell had in the apartment were the large pile of clothes, her purse, a subpoena, and some food items.
At the conclusion of the hearing, the trial court denied the motion to suppress, finding that Ms. Ferrell had actual authority to give the officers consent to enter the premises, as she had joint access or control of the apartment, and she voluntarily gave her consent for the entry. The court further found that even if she did not have such control, it was reasonable for the police to believe that she was a co-tenant under all of the circumstances.[2] The court denied the motion to suppress.
After the denial of the motion to suppress, the case proceeded to trial. Following the jury trial, appellant was convicted of possession of a firearm by a felon and possession of ammunition by a felon. The court sentenced appellant as a habitual felony offender to 204 months in prison, followed by 24 months of community control and 24 months of probation. This appeal follows.
“A trial court’s ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness and the court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court’s ruling.” Terry v. State, 668 So.2d 954, 958 (Fla.1996). An appellate court is bound by the trial court’s findings of historical fact if those findings are supported by competent, substantial evidence. Pagan v. State, 830 So.2d 792, 806 (Fla.2002); Hunter v. State, 32 So.3d 170, 173 (Fla. 4th DCA 2010). However, an appellate court applies a de novo standard of review to the mixed questions of law and fact that ultimately determine constitutional issues. See Schoenwetter v. State, 931 So.2d 857, 866 (Fla.2006); Falls v. State, 953 So.2d 627, 629 (Fla. 4th DCA 2007).
Warrantless searches “are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions.” Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (footnotes omitted). Police officers may not enter a dwelling without a warrant absent consent or exigent circumstances. Rebello v. State, 773 So.2d 579, 580 (Fla. 4th DCA 2000). Once the defendant makes a prima facie showing that law enforcement conducted a warrantless search, the burden of sustaining the legality of the search shifts to the state. Lewis v. State, 979 So.2d 1197, 1200 (Fla. 4th DCA 2008). In this case the state sought to prove the authority of appellant’s girlfriend to consent to the officer’s entry into the apartment.
To justify a warrantless search by proof of voluntary consent, the state “is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.” United States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 *364 (1974). In a well-cited explanation of common authority, the Matlock court stated:
Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-parly consent does not rest upon the law of property, with its attendant historical and legal refinements, ... but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.
Id. at 171 n. 7, 94 S.Ct. 988 (citations omitted).
Matlock described the common authority which leads to actual authority to consent to entry onto property in joint control. However, even where there may be no actual authority, officers may “reasonably (though erroneously) believe that the person who has consented to their entry is a resident of the premises[.]” Illinois v. Rodriguez, 497 U.S. 177, 186, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990).
In Rodriguez, the Court held that the state failed to meet its burden of establishing that the woman who gave permission for the search had common authority over the premises and thus actual authority to consent to the search. Id. at 181-82, 110 S.Ct. 2793. The Court explained that the woman had moved out a month before the search at issue and had removed her clothing, though she left behind some furniture and household effects. Id. at 181, 110 S.Ct. 2793. She also had a key to the defendant’s apartment and sometimes spent the night, but she never invited her friends there, and never went there herself when he was not home. Id. Further, her name was not on the lease nor did she contribute to the rent. Id. On these facts, the Court agreed with the lower court’s determination of no common authority.[3] Id. at 182, 110 S.Ct. 2793. However, the Court remanded for the lower court to determine whether the officers reasonably believed that the woman had the authority to consent. Id. at 189, 110 S.Ct. 2793.
The Seventh Circuit has identified a non-exhaustive list of facts which militate in favor of a finding of a person’s authority over the premises: (1) possession of a key to the premises; (2) a person’s admission that he or she lives at the residence in question; (3) possession of a driver’s license listing the residence as the driver’s legal address; (4) receiving mail and bills at that residence; (5) keeping clothing at the residence; (6) having one’s children reside at that address; (7) keeping personal belongings such as a diary or a pet at that residence; (8) performing household chores at the home; (9) being on the lease for the premises and/or paying rent; and (10) being allowed into the home when the owner is not present. United States v. Groves, 470 F.3d 311, 319 (7th Cir.2006). The court noted that this was not an exhaustive list but suggested the types of criteria that courts should examine in determining the issue of common authority. Id. at 319 n. 3.
*365 Relying on Matlock, the Second Circuit determined that third party consent can validate a search when two prongs are present: “first, the third party had access to the area searched, and, second, either: (a) common authority over the area; or (b) a substantial interest in the area; or (c) permission to gain access.” United States v, Davis, 967 F.2d 84, 87 (2d Cir.1992). The court later applied that analysis in a case somewhat analogous to the present case. In United States v. McGee, 564 F.3d 136 (2d Cir.2009), the defendant’s girlfriend called 911 asking for assistance. She lived with the defendant but was attempting to move out and had packed her bag. Defendant grabbed her bags, put them inside, and took away her key in an attempt to prevent her from leaving. The officer told her that she could break a window if she could provide him with evidence that she lived at the residence. She showed him a letter addressed to her at the residence, and she broke in. When the deputy entered and assisted the girlfriend in packing her remaining belongings, he discovered guns and ammunition, and defendant was eventually indicted for possession of guns by a convicted felon.
The defendant moved to suppress the evidence obtained from the residence. He argued that because he took away his girlfriend’s key and locked her out of the house, she had no authority to consent to enter the house. The court acknowledged the appeal of his argument, but rejected it under a proper analysis of Davis.
McGee’s argument is by no means unreasonable. It is true that Ellison had no formal property interest that afforded her a right to enter. Any access she enjoyed came to her solely as McGee’s invitee, and, for the moment at least, McGee had locked her out of the house and taken away her key....
While McGee’s argument is respectable, we believe it is mistaken and mis-perceives the meaning of “access” as used in Davis. Whether a so-called “third party,” i.e., one whose access depends on the approval of the person who owns the formal right of possession, has access to a premises depends on the understandings communicated by the titular owner to that person. The presence or absence of locks on doors can be helpful to the court’s discernment of that understanding, but does not directly answer it....
On the unusual facts of our case, McGee’s argument fails. McGee did not lock Ellison out of the house and take away her key with the intention of excluding her from continuing to live in his house with him. By locking the door, he was not saying, “Get out of my house and stay out.” To the contrary, McGee locked her bags in the house and locked her out temporarily in an effort to prevent her from leaving the house. Far from seeking to expel her from the house, his conduct was designed to insure that she would continue to reside in it. He was simply trying to put her baggage out of her reach so that she would not depart. While it is true that in doing so he temporarily prevented her from entering the house, that was an incidental consequence of his action rather than his objective.
Id. at 14CM1. The court affirmed the denial of the motion to suppress, concluding that both prongs of Davis, i.e., access and common authority were proved.
Although we recognize the factual differences between McGee and this case, McGee still is instructive. In this case, Ferrell told the officers that she had been living with appellant for two months. Certainly, her presence outside the apartment practically naked and beaten would indi *366 cate to the officers that she had some connection to the premises. Unlike McGee, the appellant did not deprive her of her key, and even though she did not have a key prior to entry, the officer confirmed that a key to the apartment was in her purse. Like McGee, Ferrell was trying to move out of the apartment, when appellant stopped her by pushing her out of the house without either her clothes or her purse. Certainly, if appellant wanted to deprive Ferrell of her access and right to come into the apartment, he would have thrown all of her property out of the apartment.
Appellant relies on the fact that the property manager of the apartment complex told the officer that he could not use a key to admit Ferrell to the apartment, because she was not on the lease. From this, he posits that the officers did not have a reasonable belief that she had the authority to consent. He mixes, however, the concepts of actual authority and apparent authority. The fact that Ferrell was not on the lease is not dispositive of her claim of actual authority. Under the unusual circumstances of this case, where neither appellant nor Ferrell was on the lease as a tenant, the lease has little bearing on whether Ferrell had actual authority to consent.
Under the Davis two-prong test, Ferrell had (1) access, because she had a key to the premises; and (2) either common authority or a substantial interest in the premises, as all of her clothes and purse were inside and she was living at the apartment for the past two months.
Several of the factors set forth by the Seventh Circuit are present in this case: (1) Ferrell possessed a key to the premises; (2) Ferrell made a sworn statement to the officers that she lived with appellant at the apartment; (3) Ferrell kept a substantial amount of clothes at the residence; and (4) she was allowed to be alone in the apartment and was so on the night of the incident.
Although she had not changed her address on either her license or other mailings, in considering the totality of the circumstances of this case under the description of common authority under Matlock, we conclude that the state proved that Ferrell had common authority over the apartment so that her consent for the officer to enter the premises validated their presence and discovery of the assault rifle in plain view in the bedroom. We thus affirm the trial court’s ruling.
For the foregoing reasons, we affirm the appellant’s conviction and sentence.
POLEN and STEVENSON, JJ., concur.

. At trial, the property manager testified that the individuals named on the lease to the apartment were appellant’s brother and grandmother.

. Because we decide that Ferrell had actual authority to permit the officers to enter the apartment, we do not further analyze her apparent authority.

. While appellant relies upon Rodriguez for its determination that there was no actual common authority under those facts, it is significant that in Rodriguez the woman who gave permission for entry into the premises had moved out almost a month before the search. Although she continued to stay occasionally at the premises, she removed her possessions and never invited her friends or acquaintances there, thus indicating that she did not treat this as her own home.