BENTON, J.,
dissenting.
“A trial court’s ruling on a motion to suppress comes to this Court clothed with a presumption of correct[ness] and, as the reviewing court, we must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court’s ruling.” San Martin v. State, 111 So.2d 462, 469 (Fla.1998). Given the trial court’s findings and the record on which they are based, the trial court’s ruling should be affirmed.
After a scholarly discussion of the pertinent cases, the trial court summarized its findings of fact in the following paragraph:
Here, the record reflects that, Defendant made at least two, if not more, attempts to request access to an attorney. Though Detective Jones did tell Defendant that it was his right to speak to an attorney, he continued on with the interrogation without any pause. It is clear from Detective Jones’ responses to Defendant, on at least the two occasions when that word, lawyer, is used, that Detective Jones understood that Defendant wanted to speak to an attorney. Furthermore, Defendant repeatedly requested to use the phone after asking if he needed an attorney. Whenever he asked if he could make a call to get advice, Detective Jones prevented him from doing so. Even when he explicitly asked if a lawyer was available to speak with him, Detective Jones still did not *705 make a good-faith effort to answer his question. Even when answering the question initially, Detective Jones stated to Defendant that he had a right to an attorney, but he (Detective Jones) just wanted the truth. Throughout the interrogation, Detective Jones engaged in “gamesmanship” with Defendant; and, either overrode or “steamrolled” Defendant as he attempted to invoke his right to counsel. See State v. Glatzmayer, 789 So.2d 297, 305 (Fla.2001). For this reason, Defendant’s statements to law enforcement after invocation of his right to counsel are suppressed.
On this basis, the trial court understandably ordered “Defendant’s statements to law enforcement after his invocation of his right to counsel ... suppressed.”
The majority opinion’s claim that the appellant never sought to invoke his right to counsel and that his interlocutor never rebuffed or “overrode” these efforts — and thus that the trial court erred as a matter of fact — cannot be squared with the detailed findings the trial court made on the circumstances surrounding the statements and the evidence underlying the findings:
On July 31, 2011, Detective Jones went to Defendant’s apartment with deputies from the Alachua County Sheriffs Office to investigate an alleged burglary and sexual batteries. The deputies indicate on an audio recording at the scene that Defendant has been given his Miranda warning. Subsequent to that statement, Detective Jones begins to question Defendant about the events of the previous night and that morning. Ultimately, Defendant agrees to go to the Sheriffs Office with Detective Jones. Prior to being taken to the Sheriffs Office, and while Detective Jones was collecting Defendant’s clothes for evidence, Defendant asks him, “Do I need to call somebody else?” Detective Jones responds, “No, we’re going to get this resolved.” Later, while, still preparing to go to the Sheriffs Office, Defendant asks Detective Jones, “Can you bring my phone?” Detective Jones agrees to bring the phone? but states “All right. Just power it off and we’ll bring it with us. We’re not talking to anybody else right now but you’re going to have it.” They then proceed to the Sheriffs Office.
Upon arrival at the Sheriffs Office, Detective Jones repeatedly advised Defendant that he was not under .arrest. Then, the following colloquy occurred:
[Detective Jones:] I’m going to read you your rights. It’s really 'simple. It just clarifies it, it makes it I’m the one who did it, I can stand up and say, “I’m the one who told him his rights.”
You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask any questions and have him with you during questioning if you wish. If you can’t afford a lawyer, one will be appointed for you before any questioning if you wish. If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time. You have the right to stop answering at any time until you talk to a lawyer. Do you understand each of these rights that I’ve explained to you?
[Defendant:] Yes, sir.
[Detective Jones:] Okay. With these rights in mind, do you wish to talk to me?
[Defendant:] Yes, sir.
At this point, Defendant begins to tell Detective Jones what occurred the previous evening and that morning. When Defendant finished with his description *706 of the events, Detective Jones confronted him with the allegation that he returned to the victims’ apartment and sexually battered them. Several minutes into what had now become an interrogation, the following occurs:
[Defendant:] Can you just tell me if I need to get a lawyer or something? I’ll tell you but I just don’t — I don’t want to like—
[Detective Jones:] Listen, that’s your right. But what I’m interested in is the truth,—
[Defendant:] I know.
[Detective Jones:] — okay?
The audio of the interview reflects that there was no space between the words “right” and “but” in Detective Jones’ response to Defendant’s question. It would more accurately be described as “Listen, that’s your right but what I’m interested in is the truth.” The ongoing desire of Defendant to either make a call or talk to an attorney continues:
[Defendant:] I don’t know. Just — can I — can I call my dad?
[Detective Jones:] You can, but we need to get through this first. I promise that, no matter what, when we’re done with this I’m going to let you use the phone.
[Defendant:] Don’t I get my one call?
[Detective Jones:] That’s not true.
[Detective Long:] You’re not in jail, man.
[Detective Jones:] You’re not in jail.
[[Image here]]
[Defendant:] Can I—
[Detective Jones:] But you are stuck—
[Defendant:] May I make a call first?
[Detective Jones:] You are stuck dwelling on that.
[Defendant:] What else is there, man?
[[Image here]]
[Defendant:] Dude, am I suppose— should I be saying this stuff?
[Detective Jones:] I’m just after the truth.
[Defendant:] I know. But is it going to go different for me — do I need — I just don’t know if I need to do something else.
[Detective Jones:] It’s always your choice. And like we told you, you don’t have to talk to us.
[[Image here]]
[Defendant:] I need to — am I supposed to be writing something or do I need to — I don’t want to fuck myself more than—
[Detective Jones:] If you want to—
[Defendant:] I want to say—
[Detective Jones:] I can’t let you communicate with them directly, but I will, you know, give that to them if that’s what you want to do. You don’t have to.
[Defendant:] I know, but I don’t want to fuck myself more than I already am, dude. I mean—
[Detective Jones:] That’s your choice.
[Defendant:] I want to say that I’m sorry. I don’t know what to do right now. Is there — is there a lawyer in the building or am I going to have to fucking sit in there and wait?
[Detective Jones:] No, you would have to call one. Listen, man, if you don’t want to do it—
[Defendant:] Or a call to my parents. I mean, I just want — I just need some advice, man. I just — I want to say that I’m sorry really bad, I just don’t want to—
The interrogation continues on from there until Defendant is ultimately arrested and taken to jail.
*707 (Boldface emphasis in the original omitted.) The trial judge was entitled, inter alia, to conclude that, as a matter of fact, when the defendant asked whether there was a lawyer in the building, he was requesting legal assistance, just as somebody asking whether there is a doctor in the house can be understood to be seeking medical assistance.
“‘Aspects or components of the trial court’s decision resolving legal questions are subject to de novo review, while factual decisions by the trial court are entitled to deference commensurate with the trial judge’s superior vantage point for resolving factual disputes.’ State v. Setzler, 667 So.2d 343, 344-45 (Fla. 1st DCA 1995). See Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); Connor v. State, 803 So.2d 598, 605 (Fla.2001); State v. Eldridge, 814 So.2d 1138, 1140 (Fla. 1st DCA 2002) (‘The standard of review of an order granting a motion to suppress evidence depends on the issue adjudicated by the trial court.’).” Green v. State, 824 So.2d 311, 314 (Fla. 1st DCA 2002). We are bound by the trial court’s findings of fact on orders granting suppression just as we are bound on orders denying suppression.
“‘An appellate court is bound by the trial court’s findings of historical fact if those findings are supported by competent, substantial evidence.’ ” Peraza v. State, 69 So.3d 338, 340 (Fla. 4th DCA 2011) (quoting Ferguson v. State, 58 So.3d 360, 363 (Fla. 4th DCA 2011)). See M.J. v. State, 776 So.2d 341, 342 (Fla. 1st DCA 2001) (“[T]he reviewing court is bound by the trial court’s findings of fact on this matter, made after the suppression hearing, unless the findings are clearly erroneous.”); Warren v. State, 701 So.2d 404, 405 (Fla. 1st DCA 1997) (same); Kennedy v. State, 641 So.2d 135, 136 (Fla. 5th DCA 1994) (same). While giving this principle lip service, the majority opinion honors it only in the breach. I respectfully dissent from today’s unwarranted reversal. The suppression order should be affirmed.