Gross, J.
The state challenges an order granting appellee Charles Worsham’s motion to suppress. Without a warrant, the police downloaded data from the “event data recorder” or “black box” located in Wors-ham’s impounded vehicle. We affirm, concluding there is a reasonable expectation of privacy in the information retained by an event data recorder and downloading that information without a warrant from an impounded car in the absence of exigent circumstances violated the Fourth Amendment.
Worsham was the driver of a vehicle involved in a high speed accident that killed his passenger. The vehicle was impounded. Twelve days after the crash, on October 18, 2013, law enforcement downloaded the information retained on the vehicle’s event data recorder. The police did not apply for a warrant until October 22, 2013. The warrant application was denied because the desired search had already occurred.
.Worsham was later arrested and charged with DUI manslaughter and vehicular homicide. He moved to suppress the downloaded information, arguing the police could not access this data without first obtaining his consent or a search warrant. The state defended the search on the sole ground that Worsham had no privacy interest in the downloaded information, so that no Fourth Amendment search occurred.[1] The trial court granted Wors-ham’s motion.
“A motion to suppress evidence generally involves a mixed question of fact and law. The trial court’s factual determinations will not be disturbed if they are supported by competent substantial evidence, while the constitutional issues are reviewed de novo.” State v. K.C., 207 So.3d 951, 953 (Fla. 4th DCA 2016) (internal citation omitted). An appellate court is bound by the trial court’s findings- of fact unless they are clearly erroneous. Id. The burden is on the defendant to show the search was invalid, “[h]owever, a warrant-less search constitutes a prima facie showing which shifts to the State the burden of showing the search’s legality.” Id. (internal citation omitted).
In Florida, citizens are guaranteed the right to be free from unreasonable searches and seizures by the Fourth Amendment to the Unites States Constitution and section 12 of Florida’s Declaration of Rights. Smallwood v. State, 113 So.3d 724, 730 (Fla. 2013). “The most basic constitutional rule” in the area of Fourth Amendment searches
*604 is that “searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.” The exceptions are “jealously and carefully drawn,” and there must be “a showing by those who seek exemption ... that the exigencies of the situation made that course imperative.” “[T]he burden is on those seeking the exemption to show the need for it.”
Id. at 729 (quoting Coolidge v. New Hampshire, 403 U.S. 443, 454-55, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)).
“A Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable.” State v. Lampley, 817 So.2d 989, 990 (Fla. 4th DCA 2002) (quoting Kyllo v. United States, 533 U.S. 27, 33, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001)). This principle has been applied “to hold that a Fourth Amendment search does not occur ... unless ‘the individual manifested a subjective expectation of privacy in the object of the challenged search,’ and ‘society [is] willing to recognize that expectation as reasonable.’ ” Lampley, 817 So.2d at 990-91 (quoting Kyllo, 533 U.S. at 33, 121 S.Ct. 2038)).
Katz v. United States explained “the Fourth Amendment protects people, not places,” so “[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.” 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). One example is a car’s exterior, which “is thrust into the public eye, and thus to examine it does not constitute a ‘search.’ ” New York v. Class, 475 U.S. 106, 114, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986); see also Cardwell v. Lewis, 417 U.S. 583, 592, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974) (permitting warrantless search of an automobile’s exterior).
Nevertheless, information someone seeks to “preserve as private,” even where that information is accessible to the public, “may be constitutionally protected.” Katz, 389 U.S. at 351, 88 S.Ct. 507. This is why “a car’s interior as a whole is ... subject to Fourth Amendment protection from unreasonable intrusions by the police.” Class, 475 U.S. at 114-15, 106 S.Ct. 960; see also United States v. Ortiz, 422 U.S. 891, 896, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1975) (“A search, even of an automobile, is a substantial invasion of privacy.”).
A car’s black box is analogous to other electronic storage devices for which courts have recognized a reasonable expectation of privacy. Modern technology facilitates the storage of large quantities of information on small, portable devices. The emerging trend is to require a warrant to search these devices. See Riley v. California, — U.S. —, 134 S.Ct. 2473, 189 L.Ed.2d 430 (2014) (requiring warrant to search cell phone seized incident to arrest); Smallwood, 113 So.3d 724 (requiring warrant to search cell phone in search incident to arrest); State v. K.C., 207 So.3d 951 (requiring warrant to search an “abandoned” but locked cell phone).
Noting that cell phones can access or contain “[t]he most private and secret personal information, Smallwood, 113 So.3d at 732, the Florida Supreme Court has distinguished these computer-like electronic storage devices from other inanimate objects:
[A]nalogizing computers to other physical objects when applying Fourth Amendment law is not an exact fit because computers hold so much personal and sensitive information touching on many private aspects of life.... [TJhere is a far greater potential for the “inter *605 mingling” of documents and a consequent invasion of privacy when police execute a search for evidence on a computer.
Id. (quoting United States v. Lucas, 640 F.3d 168, 178 (6th Cir. 2011)). Because of the “very personal and vast nature of the information” they contain, cell phones are “materially distinguishable from the static, limited-capacity cigarette packet in Robinson." [2] Smallwood, 113 So.3d at 732. “[T]he search of a static, non-interactive container, cannot be deemed analogous to the search of a modern electronic device cell phone.” Id. The Smallwood court made clear that the opinion was “narrowly limited to the legal question and facts with which [it] was presented.” Id. at 741. Nonetheless, the court reiterated its desire to protect Fourth Amendment precedent “by ensuring that the exceptions to the warrant requirement remain ‘jealously and carefully drawn.’ ” Id. at 740.
The United States Supreme Court drew a similar distinction between a cell phone and other tangible objects in Riley v. California. The Court held that the search incident to arrest exception did not apply bécause neither rationale-the interest in protecting officer safety or preventing destruction of evidence-justified the warrant-less search of cell phone data. Riley, 134 S.Ct. at 2486-88. “Cell phones differ in both a quantitative and a qualitative sense from other objects that might be kept on an arrestee’s person. The term ‘cell phone’ is itself misleading shorthand; many of these devices are in fact minicomputers ....” Id. at 2489.
Searches of these “minicomputers,” with their “immense storage capacity,” are far more intrusive than searches' prior to the “digital age,” which were “limited by physical realities and tended as a general matter to constitute only a narrow intrusion on privacy.” Id. The capacity of these devices “allows even just one type of information to convey far more than previously possible.” Id. The Court concluded, “[t]he fact that technology now allows an individual to carry such information in his hand does not make the information any less worthy of the protection for which the Founders fought.” Id. at 2495.
It is an issue of first impression in Florida whether a warrant is required to .search an impounded vehicle’s electronic data recorder or black box.[3] An event data recorder is a device installed in a vehicle to record “crash data” or technical vehicle and occupant information for a period of time before, during, and after a crash. NHTSA, Event Data Recorders, 49 C.F.R. § 563,5 (2015). Approximately 96% of cars manufactured since 2013 are equipped with event data recorders. Black box 101: Understanding event data recorders, Consumer Reports, http://www.eonsumer reports.org/cro/2012/10/black-box-101-understanding-event-data-recorders/index. htm, (published Jan. 2014).
Most of these devices are programmed either to activate during ah event or record information in a continuous loop, writing over data again and again until the vehicle is in a collision. Michelle V. Rafter, Decoding What's in Your Car’s Black Box, *606 Edmunds, https://www.edmunds.com/cart echnology/cardilack-box-recorders-capture-crash-data.html (updated July 22, 2014). However, if triggered, the device can record multiple events. 49 C.F.R. § 563.9,
The National Highway Traffic Safety Administration has standardized the minimum requirements for electronic data recorders, mandating that the devices record 15 specific data inputs, including braking, stability control engagement, ignition cycle, engine rpm, steering, and the severity and duration of a crash. 49 C.F.R. § 563,7. Along with these required data inputs, the devices may record additional information like location or cruise control status and some .devices can even perform diagnostic examinations to determine whether the vehicle’s systems are operating properly. See Decoding ‘The Black Box’ with Expert Advice, American Bar Assoc. GP Solo Law Trends & News, http://www.americanbar. org/content/newsletter/publications/law_ trends_news_practice_area_e_newsletter_ home/decodingblackbox.html (May 2005); Vehicular Data Recorder Download, Collection, and Analysis, Collision Research and Analysis Inc., http://collisionresearch, com/services/event-data-recorder-O.
The information contained in a vehicle’s black box is fairly difficult to obtain. The data retrieval kit necessary to extract the information is expensive and each manufacturer’s data recorder requires a different type of cable to connect with the, diagnostic port. Rafter, supra. The downloaded data must then be interpreted by a specialist with extensive training. Id.; see also Melissa Massheder Torres, The Automotive Black Box, 55 Rev. Der. P.R. 191, 192 (2015).
The record reflects that the black box in Worsham’s vehicle recorded speed and braking data, the car’s change in velocity, steering input,' yaw rate, angular rate, safety belt status, system voltage, and airbag warning lamp information.
Extracting and interpreting the information from a car’s black box is not like putting a car on a lift and examining- the brakes or tires. Because the recorded data ■is not exposed to the public, and because the stored data is so difficult to extract and interpret, we hold there is a reasonable expectation of privacy in that information, protected by the Fourth Amendment, which required law enforcement in the absence of exigent circumstances to obtain a warrant before extracting the information from an impounded vehicle.
Although electronic data recorders do not yet store the same quantity of information as a cell phone, nor is it of the same personal nature, the rationale for requiring a warrant to search a cell phone is informative in determining whether a warrant is necessary to search an immobilized vehicle’s data recorder. These recorders document more than what is voluntarily conveyed to the public and the information is inherently different from the tangible “mechanical” parts of a vehicle. Just as cell phones evolved to contain more and more personal information, as the electronic systems in cars have gotten more complex, the data recorders are able to record more information.[4] The difficulty in extracting such information buttresses an expectation of-privacy.
*607 Recently enacted federal legislation enhances the notion that there is an expectation of privacy in information contained in an automobile data recorder. The Driver Privacy Act of 2015 states that “[a]ny data retained by an event data recorder ... is the property of the owner ... of the motor vehicle in which the event data recorder is installed.” § 24302(a), 49 U.S.C. § 30101 note (2015). The general rule of the statute is that “[d]ata recorded or transmitted by an event data recorder ... may not be accessed by a person other than an owner ... of the motor vehicle in which the event data recorder is installed.” § 24302(b) (emphasis added). There are only five exceptions to this rule, which include authorization'from a court or administrative authority or consent of the owner. § 24302(b)(l)-(5).'
A state court in California has addressed the Fourth Amendment’s application to a vehicle’s data recorder. That authority is not persuasive or controlling and was decided prior to the passing of the Driver Privacy Act of 2015.
People v. Diaz, held that the defendant lacked a privacy interest in his vehicle’s speed and braking data, obtained from the “sensing diagnostic module” after a fatal accident, 213 Cal.App.4th 743, 153 Cal.Rptr.3d 90 (2013). It was undisputed the search was conducted without a warrant, over a year after the accident. Id. at 96. There was testimony about the defendant’s speed at the time of the accident, but the officer conceded this was based on the information downloaded from the vehicle’s sensing diagnostic module. Id. at 94.
The coürt concluded that the defendant failed to demonstrate “a subjective expectation of privacy in the SDM’s recorded data because she was driving on the public roadway, and others could observe her vehicle’s movements, braking, and speed, either directly or through the use of technology such as radar guns or automated cameras.” Id. at 102. Since the diagnostic module “merely captured' information defendant knowingly exposed to the public,” downloading that information without a warrant was not a violation of the Fourth Amendment. Id. (citing Smith v. Maryland 442 U.S. 735, 741-45, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979) (holding installation of a pen register did not violate the Fourth Amendment because it- only recorded information “voluntarily conveyed ... in the ordinary course of business.”)).
Diaz is unpersuasive. It relied on Smith v. Maryland, which found no expectation of privacy in information “voluntarily conveyed” to a third party. 422 U.S. at 745, 99 S.Ct. 2577. However, when addressing digital devices, the Supreme Court has moved away from the Smith rationale. In United States v. Jones, the Court could have relied on Smith when considering the constitutionality of placing á GPS tracking device on a vehicle without a warrant, since the vehicle’s position “had been voluntarily conveyed to the public.” 565 U.S. 400, 132 S.Ct. 945, 951, 181 L.Ed.2d 911 (2012). Instead, the Court relied on a trespass theory to find that while “mere visual observation does not constitute a search,” attaching a device to the vehicle or reaching into a vehicle’s interior constitutes “encroach[ment] on a protected area.” Id. at 952-53.
Additionally, the Diaz court’s reliance on Smith v. Maryland seems misplaced because,, as the opinion acknowledged, sensory diagnostic modules can record much more information than what is observable to the public, including “the throttle, steering, suspension, brakes, tires, and wheels.” 213 Cal.App.4th at 748, 153 Cal.Rptr.3d 90. We disagree with Diaz that all black box data is “exposed to the public.”
Although the issue was not before the Court, the majority in Jones acknowledged *608 that acquiring data “through electronic means, without an accompanying trespass,” could still be “an unconstitutional invasion of privacy.” Id. at 953.
In his concurring opinion, Justice Alito expressed a preference for analyzing the case by “asking whether [Jones’s] reasonable expectations of privacy were violated by the long-term monitoring of the movements of the vehicle he drove.” 132 S.Ct. at 958. Justice Alito observed that the Katz expectation-of-privacy test,
rests on the assumption that this hypothetical reasonable person has a well-developed and stable set of privacy expectations. Dramatic technological change may lead to periods in which popular expectations are in flux and may ultimately produce significant, changes in popular attitudes. New technology may provide increased convenience or security at the expense of privacy, and many people may find the trade off worthwhile.
Id. at 962. Under Justice Alito’s approach, the constant, unrelenting black box surveillance of driving conditions could contribute to a reasonable expectation of privacy in the recorded data. Considering that the data is difficult to access and not all of the recorded information is exposed to the public, Worsham had a reasonable expectation of privacy, and we agree with the trial court that a warrant was required before police could search the black box.

Affirmed.

Klingensmith, J., concurs.
Forst, J., dissents with opinion.

. The state raises inevitable discovery and good faith in its brief. We do not reach these issues because they were not preserved in the circuit court. Sunset Harbour Condo. Ass’n v. Robbins, 914 So.2d 925, 928 (Fla. 2005).

. United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) (permitting the warrantless search of an arrestee’s person incident to arrest if the officer had probable cause for the arrest).

. As of this writing, 17 states have laws ad-, dressing event data recorders, which provide under what circumstances the data may be - downloaded. Privacy of Data From Event Data Recorders: State Statutes, National Conference of State Legislatures, http;//www,ncsl.org/ research/telecommunications-and-information-technology/privacy-of-data-from-event-data-recorders.aspx (Jan. 4, 2016). Flor- • ida does not have similar legislation.

. See U.S.'Gov’t Accountability Off., Report to Chairman, Subcomm. on Privacy, Tech, and the Law, Comm, on the Judiciary, U.S. Senate, (Dec. 2013), http://www.gao.gov/assets/660/659509. pdf; Peter Gareffa, Senate Committee Approves Black Box Privacy Bill, Edmunds, (Apr. 18, 2014), https://www.edmunds.com/car-news/senate-committee-approves-black-boxprivacy-bill.html.